COMMONWEALTH vs. RALPH J. BLASSER.

Suffolk.    November 11, 1974. — January 10, 1975.

Present: HALE, C.J., KEVILLE, GRANT, & ARMSTRONG, JJ.

*Practice, Criminal,* Assistance of counsel, Speedy trial.  *Constitutional Law,* Speedy trial.  *Pleading, Criminal,* Indictment.

Where a criminal defendant had refused to discuss with his court-appointed attorney certain charges against him but his attorney had had full access to the government's case, the judge properly denied the defendant's motion to discharge his attorney made when the cases were called for trial on the ground that the attorney was not prepared.  [758-760]

The trial judge properly denied a criminal defendant's motion to dismiss based on a five-month delay in bringing him to trial, where the defendant was not prejudiced by the delay and did not assert his right to a speedy trial until the first trial day.  [760-761]

A criminal defendant, who had not moved to dismiss the indictments against him, was not prejudiced by a judge's instruction that by pleading not guilty he waived his right to contest the use of a certain alias in the indictments, especially where there were further instructions on the issue of the defendant's identity.  [761-763]

Two INDICTMENTS found and returned in the Superior Court on March 5, 1969.

The cases were tried before *McLaughlin,* C.J.

*John M. Russell, Jr.,* for the defendant.

*Newman A. Flanagan,* Assistant District Attorney, for the Commonwealth.

HALE, C.J.    This case comes to us under the provisions of G. L. c. 278, §§ 33A-33G, after the defendant's conviction of armed robbery (Indictment No. 40854) and

unlawfully carrying a firearm (Indictment No. 40855).[1] The defendant was acquitted under a third indictment (No. 40856) charging assault with a dangerous weapon. At the trial there was evidence that between 8:00 and 8:30 P.M. on January 10, 1969, the defendant entered a market on Dorchester Avenue in Boston and bought some cigarettes. He left the store and returned a short time later, informing the cashier that she had given him incorrect change. He then pulled a gun part way from his clothing and told the cashier not to be excited but to open up the register and give him all the money. The cashier gave the defendant the smaller denominations of bills from the register. The defendant demanded bills of larger denomination and reached into the cash register, pulled out the coin section, and took all of the twenty dollar bills which lay beneath. As the defendant started to leave, the market's co-owner, one Vega, who had seen the defendant take the money, seized the defendant and a struggle ensued. The other co-owner, one Harold, came to Vega's assistance. During the struggle the bills fell to the floor. The gun, which was in the defendant's hand, was fired four times, one of the shots passing through a package of cigarettes in Harold's breast pocket. Vega and Harold overpowered the defendant and took his gun. An off-duty Boston police officer, one James Ahearn, who had been walking past the market when his attention was attracted by the shots, observed the struggle and the money on the floor. He entered, identified himself, and arrested the defendant. He took possession of the gun as well as four spent cartridges and

---

[1] As a result of papers filed in this court by the defendant while the appeal in this case was pending, a single justice of this court appointed new counsel for the defendant, and thereafter the case was remanded to the trial judge for an evidentiary hearing and findings of fact on the issues raised by those papers and by a document filed at the defendant's trial on October 14, 1971. The record on appeal was expanded to include the findings of the judge. Supplemental briefs were filed, and the case was then argued.

subsequently turned these over to Officer Frank DiNatale, who arrived at the market at about 8:30 P.M.

Indictments Nos. 40854-40856 (the 1969 cases), upon which the defendant was tried, and which are now before us, were returned on March 5, 1969. The defendant fled the Commonwealth shortly after his arrest, spending some of the time in California,[2] but subsequently returned to Massachusetts. On December 26, 1970, the defendant was arrested by Officer DiNatale on charges stemming from unrelated incidents which occurred on December 24, 1970 (the 1970 cases).

On May 27, 1971, the defendant appeared before a Superior Court judge on certain motions which had been filed in the 1970 cases. By one of those motions the defendant sought to discharge the Massachusetts Defenders Committee (M.D.C.) as his counsel, alleging that a conflict of interest existed as the result of the M.D.C.'s representation of both the defendant and a co-defendant. The defendant informed the judge that he had talked with a private attorney, whom he named, and requested that that attorney be assigned as his counsel. The motion to discharge the M.D.C. was denied. Immediately thereafter the assistant district attorney in charge of the case informed the judge that it had come to his attention that there were other indictments outstanding (the 1969 indictments). The defendant was thereupon arraigned on those indictments, being represented by an M.D.C. attorney. The defendant stood mute, and pleas of not guilty were entered by order of the court.

On June 8, 1971, the defendant was brought before the arraignment judge who informed him that he had contacted the private attorney requested by the defendant and that he was present in court. That attorney then made a statement to the effect that, while he had previously

---

[2] There is an indication in the record that the defendant escaped from the Charles Street jail, where he was being held following his arrest on January 10, 1969.

agreed to accept an appointment to represent the defendant, his present schedule would not permit his doing so. The judge then appointed Mr. Barry Haight to represent the defendant. The docket entries for the robbery indictment (No. 40854) do not reflect this appointment, but the docket entries in the companion cases state, "June 8, 1971 . . . after hearing . . . [the court] appoints Barry Haight, Esquire, as attorney for defendant. Letter of appointment filed."[3]

The evidence on remand tended to show that several times during the summer of 1971 Mr. Haight conferred with the defendant at the Charles Street jail. Ninety per cent of the time was spent discussing the 1970 cases. The defendant was reluctant to discuss the 1969 cases, informing Mr. Haight that there were no witnesses against him and that he preferred to discuss the 1970 cases, as both the defendant and Mr. Haight agreed that those cases were "triable." The defendant suggested to Mr. Haight that the identification procedures in the 1969 cases should be challenged and reiterated that there were no witnesses. On one occasion Mr. Haight informed the defendant that the assistant district attorney could proceed on any of the cases and asked the defendant if he would allow him to talk with the assistant district attorney. The defendant responded, "Find out what he'll offer." The assistant district attorney disclosed to Mr. Haight everything which was in his file on the 1969 cases. Thus, Mr. Haight had full knowledge of the expected testimony of each witness.

All of the cases were called for trial on September 17, 1971, at which time they were continued to October 13, 1971, as Mr. Haight was engaged elsewhere.

On October 13, 1971, the Commonwealth moved for trial on the 1969 cases. The defendant protested, stating

---

[3] It is clear from these entries and from the findings of the trial judge on remand that it was the intention of the arraignment judge to appoint Mr. Haight as attorney for the defendant on all three of the 1969 indictments as well as on the 1970 indictments.

that he had expected to go to trial on the 1970 indictments and that he was unprepared for trial on the 1969 indictments. Mr. Haight informed the court, as he had previously informed the defendant, that he had had access to the assistant district attorney's file, including the grand jury minutes, that he had talked with the police officers involved in the case, and that he had seen witnesses who would be appearing. He informed the court that he "couldn't be any more prepared." The defendant thereupon addressed the court and denied that he had ever had any conversation with Mr. Haight concerning the 1969 cases. He stated that he had no knowledge that he was going to be tried on those charges, and that he was prepared on the 1970 cases but not on the 1969 cases, and requested a delay. The judge ordered the trial to proceed. The defendant then orally moved that the 1969 cases be dismissed for want of a speedy trial. A jury was impaneled. The assistant district attorney made his opening statement, and the case was continued to October 14, the following day. On that day the defendant filed a written document requesting the dismissal of the 1969 indictments because of the denial of a speedy trial and further requesting that he be permitted to discharge Mr. Haight as his lawyer and secure a lawyer of his own choosing, stating, among other things, that despite what Mr. Haight had said, the 1969 cases were not prepared for trial. He informed the court that he had witnesses but when directed by the court to furnish their names to Mr. Haight, he declined to do so, stating that he was not accepting Mr. Haight as his counsel. The judge treated the document as a motion, denied it, and noted the defendant's exception. The defendant reiterated his refusal to accept Mr. Haight as counsel throughout the trial (although the transcript indicates that on numerous occasions during the trial Mr. Haight conferred with the defendant) and stated to the court that he did not accept the proceeding as a trial.

1. We first consider the judge's denial of the defendant's motion to discharge his court-appointed attorney.

The defendant makes no contention that Mr. Haight's representation was in any way incompetent. The judge, on remand, found as a fact that Mr. Haight had handled all aspects of the case in an outstanding manner. The defendant concedes that he was not entitled to have a particular attorney appointed to represent him (*Commonwealth* v. *Drolet*, 337 Mass. 396, 400 [1958]; *Commonwealth* v. *Bernier*, 359 Mass. 13, 19 [1971]; *Commonwealth* v. *Miskel*, 364 Mass. 783, 789 [1974]; *Commonwealth* v. *Smith*, 1 Mass. App. Ct. 545, 547-548 [1973]; see *Brown* v. *Craven*, 424 F. 2d 1166, 1170 [9th Cir. 1970]) and that he could not wait until his case was called for trial to request a continuance and the appointment of new counsel. See *United States* v. *Calabro*, 467 F. 2d 973, 986 (2d Cir. 1972), cert. den. 410 U. S. 926 (1973). He contends, however, that despite full access to the government's case his attorney could not have been prepared for trial without having discussed the 1969 cases and any possible defenses with him. The trial judge on remand found that the defendant had refused to discuss those cases with Mr. Haight. The findings also make clear that Mr. Haight sought such discussion but that the defendant chose instead to discuss the 1970 cases. The defendant made that choice notwithstanding Mr. Haight's warning that the Commonwealth could move for trial on either set of indictments.

The defendant's insistence that he expected the Commonwealth to proceed on the 1970 cases was without basis. At the outset of the trial the defendant protested his lack of preparation and told the judge that he had witnesses whose names he had not previously given to Mr. Haight but now desired to give him. The judge responded, "Why don't you tell him the names of the witnesses you want him to see and to arrange to have them in here?" This the defendant refused to do, and he told the judge that he would not accept Mr. Haight as his attorney in the 1969 cases. The defendant now contends that this refusal was justified for the reason that a courtroom at the time of trial is not the proper setting for

preparing a case. By his refusal to name any witnesses (if in fact he had any) he denied his counsel the opportunity to request that the case be continued to afford him the opportunity to interview and arrange for the attendance of such witnesses. It appears to us from the above-quoted question that the judge would have honored such a request. If the defendant was in any way impeded by not having the testimony of witnesses he might have named, the fault was entirely his own.

The decision in this area "must be largely within the discretion of the trial judge. . . ." *Lamoureux* v. *Commonwealth*, 353 Mass. 556, 560 (1968). *Commonwealth* v. *Ransom*, 358 Mass. 580, 584-585 (1971). *Commonwealth* v. *Miskel*, 364 Mass. 783, 791 (1974); *Commonwealth* v. *Smith*, 1 Mass. App. Ct. 545, 548 (1973). See also *Lamoureux* v. *Massachusetts*, 412 F. 2d 710, 711 (1st Cir. 1969). There is not the slightest indication of error in the judge's refusal to allow the discharge of Mr. Haight and to appoint new counsel in his place.

2. There was no error in the denial of the defendant's motion to dismiss. On remand, the judge found that while the delay of twenty-six months from indictment to arraignment was unquestionably long, twenty-one months' delay was caused by the defendant, and only five months' delay was caused by the Commonwealth.[4] The defendant focuses his argument on the latter period and avers that it was unreasonable. He also asserts that regardless of whether he might have been prejudiced by the five months' delay, the court erred in denying his motion to dismiss.

The defendant is guaranteed the right to a speedy trial by the Sixth Amendment to the Constitution of the United States (*Klopfer* v. *North Carolina*, 386 U. S. 213, 222-223 [1967]) and by the "analogous mandate" of Massachusetts Declaration of Rights, art. 11. *Common-*

---

[4] The five months' period ran from the defendant's arrest on December 26, 1970, to the time of his arraignment on May 27, 1971.

*wealth* v. *Green,* 353 Mass. 687, 690 (1968). *Commonwealth* v. *Gove,* 366 Mass. 351, 356 n. 6 (1974). In determining whether there has been compliance with these constitutional provisions, four factors must be considered: the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. *Barker* v. *Wingo,* 407 U. S. 514, 530-533 (1972). *Commonwealth* v. *Horne,* 362 Mass. 738, 742-743 (1973). *Commonwealth* v. *Gilbert,* 366 Mass. 18, 21 (1974).

On remand the judge found that during the five months' period the defendant was incarcerated on other charges, that bail had been set, that no request for a reduction of bail had been made, and that there was no evidence of anxiety or concern occasioned by the delay. He further found that there was no evidence of prejudice to the defendant in the preparation of his defense as the result of the delay. The judge also found that the defendant's first assertion of his right to a speedy trial was made on the first day of trial when he filed his motion to dismiss. The record provides ample support for these findings. The defendant sought no explanation of reasons for the five months' delay, nor was one given by the Commonwealth.[5] The burden was on the defendant to demonstrate that the Commonwealth unreasonably caused a prejudicial delay sufficient to warrant a dismissal. *Commonwealth* v. *Gilbert,* 366 Mass. 18, 22 (1974). *Commonwealth* v. *Gove,* 366 Mass. 351, 361 (1974). See *Commonwealth* v. *Jones,* 360 Mass. 498, 502 (1971). We are satisfied that the defendant did not sustain his burden.

3. The indictments before us name the defendant as "Ralph J. Blasser, otherwise known as James F. Atencio." There was no evidence that the defendant was ever

---

[5] The gist of the defendant's argument on this point seems to be that as Officer DiNatale had participated in both arrests, the burden was on the Commonwealth to explain or justify the delay.

known by the latter name. In his charge to the jury the judge, relying on the case of *Turns* v. *Commonwealth*, 6 Met. 224, 235-236 (1843), instructed the jury to the effect that the defendant "by pleading not guilty" (the defendant had stood mute at arraignment) "admits himself rightfully designated by the names stated" in the indictment. He then modified this language by instructing the jury that before the defendant "comes to trial, if he is going to raise any question concerning whether or not he is properly named, it is up to him through his attorney to file a motion to dismiss the indictments." Thus, the court first stated the law in effect prior to the insertion of § 47A into c. 277 of the General Laws (see St. 1965, c. 617, § 1) and the adoption of Rule 101A of the Superior Court, effective December 1, 1964, and then went on to describe the changes in that law which were effected by the statute and the rule. The defendant's exception to the judge's charge, upon which his assignment of error is based, asserts that it was error for the judge to charge that the defendant had waived his right to require that the prosecution prove that he was otherwise known as James F. Atencio. We do not regard the judge's charge to have been erroneous on that point, considering the requirements of Rule 101A of the Superior Court then in effect.[6] But in any event, in view of the judge's further instruction to the jury ("The issue for the jury is not what is the individual's name, but whether the person who has pleaded is guilty of the offense as

---

[6] Rule 101A of the Superior Court, which has been carried over without change as Rule 60 of the Superior Court, effective July 1, 1974, provides in pertinent part: "A plea of not guilty, whether voluntarily made by the defendant or entered by order of the court, shall not be deemed to be a waiver of matters in bar or abatement or an admission of the validity of the indictment or complaint. A defendant at the time of the entry of such plea, or within ten days thereafter or within such further time as the Court may order, may file such motions and other pleadings relating to matters in bar or abatement or to the validity of the indictment or complaint as he may desire without at any time retracting the plea of not guilty."

charged. In other words, is he the individual, no matter what he is called.") and in view of the overwhelming evidence of guilt in this case, we fail to see how the defendant could possibly have been harmed by the challenged portion of an otherwise unexceptionable charge. See *Commonwealth* v. *Torrealba,* 316 Mass. 24, 26 (1944). See also *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 229-230 (1971), cert. den. sub nom. *Farrell* v. *Massachusetts,* 407 U. S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U. S. 914 (1972).

The assignment of error based on the judge's denial of the defendant's motion for directed verdicts which understandably was not briefed or argued, is deemed to have been waived. Rule 1:13 of the Appeals Court, 1 Mass. App. Ct. 889 (1972).

*Judgments affirmed.*