COMMONWEALTH *vs.* KENNETH JACKSON.

Hampden.    September 8, 1975. — October 7, 1975.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Practice, Criminal,* Examination of jurors, Speedy trial. *Identification. Constitutional Law,* Speedy trial.

Under the principles set forth in *Commonwealth v. Lumley,* 367 Mass. 213 (1975), there was no merit in a black criminal defendant's contention that he was denied due process of law by the judge's refusal to ask prospective jurors certain questions concerning racial prejudice. [513]

A judge did not err in denying a defendant's motion to suppress the victim's identification of him in a police lineup where, on conflicting evidence presented to him at an extensive pre-trial hearing, the judge could have found that the lineup met constitutional standards;

it was implicit in the judge's ruling that he accepted the Commonwealth's version of the conduct of the lineup. [513-514]

A criminal defendant who was brought to trial thirty-eight months after arraignment and who had moved for a speedy trial on several occasions was not denied his right to a speedy trial where most of the delay was attributable to the defendant's refusal to accept various court-appointed counsel and to his own inability to find other counsel acceptable to him, whom the judge offered to appoint, and where the defendant failed to show prejudice on account of the delay. [515-518]

INDICTMENTS found and returned in the Superior Court on September 17, 1969.

A pre-trial motion to suppress evidence was heard by *Tamburello, J.,* and the cases were tried before him.

*David A. Sonenshein* for the defendant.

*John T. McDonough* for the Commonwealth.

HALE, C. J.  This case comes to us on appeal (G. L. c. 278, §§ 33A-33G) from convictions of kidnapping (indictment 22784), assault with a dangerous weapon (indictment 22785), and rape (indictment 22786), all arising out of a single incident. The defendant was arraigned on September 22, 1969, on these and four unrelated indictments.[1]

We consider the assignments of error which were briefed. Those assignments concern (1) the refusal of the trial judge to ask questions concerning racial prejudice on voir dire; (2) the denial of the defendant's motion to suppress "any and all identification of the defendant" by the victim; and (3) the denial of the defendant's motions to dismiss for lack of a speedy trial. For the reasons set out below we affirm the convictions.

Evidence was introduced at trial which showed that on the evening of August 21, 1969, the defendant picked up the victim, a hitchhiker, at the Copley Square, Boston, entrance to the Massachusetts Turnpike. He drove west on the Turnpike, exiting at Palmer (Exit 8). He then drove onto a side road, bound and blindfolded the victim,

---

[1] The other four indictments were tried separately. On October 17, 1969, the defendant was convicted on all four indictments and was sentenced to the Massachusetts Correctional Institution, Walpole. See *Commonwealth* v. *Jackson, ante,* 288 (1975).

and forcibly raped her at knifepoint. The victim identified the defendant at a lineup identification on September 17, 1969, at the Hampden County Jail in Springfield. Counsel for the defendant observed the lineup.

Prior to trial an evidentiary hearing was held on each of the motions which are the subjects of the assignments of error. We shall discuss the evidence affecting each assignment as we consider them separately.

1. During the course of the pre-trial hearing the trial judge denied the defendant's motion to ask the jurors a list of twenty-three questions on voir dire. Among those questions were three which related to racial prejudice.[2] The judge denied the requested questions ruling, in substance, that they were either irrelevant or encompassed by the statutorily mandated questions on bias and prejudice. G. L. c. 234, § 28, as in effect prior to its amendment by St. 1973, c. 919.

The defendant's assertion of a denial of due process by the judge's refusal to ask questions concerning racial prejudice on voir dire is controlled by the opinion of the Supreme Judicial Court in *Commonwealth* v. *Lumley*, 367 Mass. 213 (1975). See *Commonwealth* v. *Anderson, ante,* 463, 465-466 (1975). The facts of the present case are not materially distinguishable from those in *Lumley*.

2. The defendant also argues that the trial judge committed reversible error in (1) denying the defendant's motion to suppress the victim's in-court identification which, it is contended, was infected by an improperly conducted lineup; and (2) admitting testimony by the victim and the police at trial concerning that lineup. He also contends (3) that the admission of the pre-trial identification requires us to reverse. See *Gilbert* v. *California*, 388 U. S. 263, 272-274 (1967); *Commonwealth* v. *Mendes*, 361 Mass. 507,

---

[2] The proposed questions were: "10. Do you have feelings either of hostility or of good will toward Black people in general? . . . 16. Would you be able to give a Black defendant the same presumption of innocence that you would give to a White defendant? . . . 20. If you were a Black defendant in this case, would you be satisfied having you as a juror in this case?"

509-510 (1972). Since the defendant's counsel observed the lineup, testimony about that identification is admissible unless the lineup was conducted in a manner so unnecessarily suggestive and conducive to mistaken identification that the defendant was denied due process of law. *Neil* v. *Biggers,* 409 U. S. 188, 198 (1972). See *Commonwealth* v. *Wheeler, ante,* 387 (1975). See also *Stovall* v. *Denno,* 388 U. S. 293, 302 (1967).

The trial judge conducted an extensive pre-trial hearing on the conduct of the lineup. At the hearing the judge had before him photographs of the participants in the lineup and heard conflicting evidence introduced by the defendant and by the prosecution witnesses. In particular, the trial judge heard testimony from which he could have found that the participants in the lineup possessed similar physical characteristics, that uniformed guards touched several men other than the defendant during the lineup, and that the defendant had not been singled out. He denied the motion to suppress evidence without making specific findings of fact. The Supreme Judicial Court has strongly encouraged trial judges to make specific findings of fact about the conduct of lineups. *Commonwealth* v: *Frank,* 357 Mass. 250 (1970). *Commonwealth* v. *Murphy,* 362 Mass. 542 (1972). However, the denial of the motion to suppress evidence in the present case depended only on a resolution of widely divergent versions of the conduct of the lineup. It is implicit in the judge's ruling that he accepted the Commonwealth's version of the lineup. In the present case evidence of all the details of the lineup was introduced before the trial judge. His ruling resolved the conflict. As was pointed out in *Commonwealth* v. *Murphy,* 362 Mass. at 550-551 (Hennessey, J., concurring), "In particular, it is inappropriate to ask us to reverse a judge's findings involving credibility, since he saw the witnesses and we did not." Contrast *Cooper* v. *Picard,* 428 F. 2d 1351 (1st Cir. 1970) (remanded for an evidentiary hearing as the trial judge had failed to make findings of fact and no evidence had been taken at trial about certain details of the lineup).

3. The defendant's assertion of a denial of his constitutional right to a speedy trial requires a more detailed analysis. Such a claim must be measured by a delicate balancing of the four factors listed by the United States Supreme Court in *Barker* v. *Wingo*, 407 U. S. 514, 530-533 (1972): the length of delay, the reasons for delay, the defendant's assertion of his right, and the prejudice to the defendant. *Commonwealth* v. *Horne*, 362 Mass. 738 (1973). The thirty-eight months' period between arraignment and trial in the present case certainly is long enough to trigger serious concern. *Commonwealth* v. *Gilbert*, 366 Mass. 18, 21 (1974). A summary of the events of that interval is essential to a resolution of the defendant's claim of a denial of a speedy trial. The defendant moved for a speedy trial on February 13, 1970. The case was continued on February 19 for the appointment of counsel. The defendant's first counsel, Mr. Edward F. McBride, Jr., of the Massachusetts Defenders Committee, withdrew at that time. On March 3, 1970, Mr. John Teahan, also of the Massachusetts Defenders Committee, was assigned. A Superior Court judge allowed the speedy trial motion on March 18, 1970. On March 27, 1970, the defendant filed a series of motions. A motion for a bill of particulars was allowed. A clerk in the district attorney's office testified at the pre-trial hearing on November 14, 1972, that the Commonwealth had been prepared to go to trial on March 3, 1970, but that the defendant had not been prepared at that time because he was not represented by counsel and was seeking additional witnesses. Further evidence was available to the trial judge from which he could conclude that the Commonwealth had been prepared to try the case at all times after March 3, 1970. Mr. Teahan withdrew as counsel on May 5, 1970, following a dispute with the defendant. The court then offered to appoint Mr. Henry Quarles as counsel, but during the course of that summer disagreements arose between the defendant and Mr. Quarles, who then withdrew from the case and no appointment was made.

The defendant again appeared in court on September 18, 1970, and Mr. Jerome Farrell was suggested as counsel.

He conferred with the defendant, but the defendant refused to accept him. On September 21, 1970, the judge offered to appoint any member of the bar of the Commonwealth of Massachusetts who would agree to be the defendant's lawyer. The defendant testified at the pre-trial hearing that he then wrote to a number of attorneys but none of them would accept his case. The defendant's next recorded appearance in court was on February 16, 1972. At that time a motion to dismiss for lack of a speedy trial was offered. That motion was denied by a second judge, but an order for a speedy trial was issued. On March 13, 1972, the defendant was brought before a third judge for the appointment of counsel, and the case was continued to March 23 to allow the defendant time to find counsel. Trial counsel was appointed in June. Several motions for discovery and a second motion for a bill of particulars were filed on June 29, 1972, and July 24, 1972. Some of those were referred to the trial judge; others were disposed of by a fourth judge. On September 13, 1972, the defendant filed another motion for speedy trial or dismissal. A fifth judge allowed the motion as to speedy trial but denied it as to dismissal and on September 21, 1972, denied a further motion for dismissal based on the denial of the right to counsel. In his endorsement to the motion that judge noted, "Repeated attempts to provide counsel rejected by defendant." We consider this to be a finding. Trial began on November 14, 1972.

In denying the defendant's motions to dismiss for lack of a speedy trial, the trial judge found: "[T]he delay was not purposeful or oppressive on the part of the Office of District Attorney. The delay was not occasioned by culpable governmental conduct on the part of the District Attorney's Office or the Commonwealth. I find the defendant has not been prejudiced, having in mind the entire docket, having in mind the three years it's been proceeding, having in mind the 156 entries, 36 motions, 10 lawyers spoken about, 8 judges taking part in the proceedings, letters to attorneys, letters from attorneys, the testimony of the defendant, I find and rule that there has been no

conduct on the part of the Commonwealth that has been detrimental to the defendant, and I therefore dismiss the motions." Absent a demonstration of culpability on the part of the Commonwealth in delaying trial, "the burden ... [is] on the defendant to show that the government unreasonably caused a prejudicial delay." *Commonwealth v. Gilbert,* 366 Mass. at 22. The defendant's claim that he was prejudiced by the loss of memory of his alibi witnesses was advanced before the trial judge. The defendant made no showing, however, that his witnesses' memories would have been better at an earlier date.[3] The trial judge's finding that there had been no prejudice will not be disturbed here.

The defendant asserted his right to a speedy trial on a number of occasions during the proceedings, including February, 1970, April, 1970, February, 1972, and September, 1972. The numerous changes of counsel caused by the defendant's refusal to accept various court-appointed counsel brought about much of the delay, as the trial judge found. In September of 1970, the first Superior Court judge, apparently abandoning hope of appointing acceptable counsel, offered the defendant the opportunity to find his own counsel, whom the court would then appoint. The defendant failed to obtain such counsel. Although the defendant testified that he reported his failure to find counsel to that judge, the trial judge was not required to believe him. The trial judge's finding that the defendant failed to carry the burden of showing that the Commonwealth unreasonably caused the delay has ample support in the evidence.

The first Superior Court judge's efforts to find acceptable counsel for the defendant far exceeded the requirements imposed by the Constitution or by court rule (see S.J.C.

---

[3] The defendant's evidence disclosed that on April 23, 1970, an investigator employed by the Massachusetts Defenders Committee, represented that he had interviewed two witnesses named by the defendant and that those witnesses were unable to recall whether they were with the defendant on the day of the crime. The investigator was unable to locate other vaguely described potential alibi witnesses. The defendant's own efforts to locate one of the witnesses were futile.

Commonwealth *v.* Jackson.

Rule 3:10, 351 Mass. 791 [1967]). A defendant has no constitutional right to particular appointed counsel. *Commonwealth* v. *Blasser*, 2 Mass. App. Ct. 754, 759 (1975), and cases cited. It has been held that the Commonwealth's duty to provide counsel is satisfied if competent counsel is assigned; if the defendant refuses assigned counsel, he must either procure his own, or appear pro se. *Commonwealth* v. *Drolet*, 337 Mass. 396, 401 (1958). While the defendant appeared as co-counsel in July, 1972, he had at all times during the proceedings insisted that he have court-appointed counsel appear for him.

Delays caused by a defendant's action do not give rise to a right of dismissal for lack of a speedy trial. As the Supreme Judicial Court said in *Commonwealth* v. *Gilbert*, 366 Mass. at 22, "While it is true that '[a] defendant has no duty to bring himself to trial,' *Barker* v. *Wingo*, . . . [407 U. S. at 527], he cannot rightly complain if his own or his counsel's actions are substantially responsible for the prosecution's failure to press for the earliest possible trial date."

In view of the defendant's failure to show that the delays were attributable to factors other than his inability to find counsel acceptable to him and the failure to show prejudice on account of the delay, we affirm the denials of the motions to dismiss for lack of a speedy trial.

*Judgments affirmed.*