COMMONWEALTH *vs.* JAMES E. FLAHERTY.

Suffolk.    March 15, 1973. — May 8, 1973.

Present: HALE, C.J., ROSE, & GRANT, JJ.

*Identification.    Practice, Criminal,* Questioning of witness by judge, Voir dire.  *Error,* Whether error harmful.  *Evidence,* General objection.

At the trial of an indictment for armed robbery while masked in a loan company office, where it appeared that each of three eyewitnesses had the robber under almost constant observation for five to ten minutes at a close distance under daylight conditions, that, immediately after the robbery, one of the witnesses accurately described the robber and his clothing to a police officer, that the witnesses identified no other person than the defendant as the robber and that the identification of the defendant by each witness at an illegal showup by police some twenty to thirty minutes after the robbery was quick and positive, conclusions were warranted that the witnesses' in-court identifications were based upon their observations of the

Commonwealth v. Flaherty.

defendant at the time of the robbery and were independent of and untainted by their observations at the illegal showup. [285-288]

At a criminal trial, there was no prejudicial error in the conduct by the judge of a voir dire to determine whether proffered in-court identifications of the defendant by three eyewitnesses were independent of their out-of-court identifications, which had been suppressed on pretrial motion after extensive testimony, in that the judge's questions were leading and suggestive, or in that he refused to allow the defendant to cross-examine the witnesses; nor was there error in allowing the witnesses' subsequent in-court identifications. [288-290]

Evidence at a criminal trial, other than in-court identifications by three eyewitnesses allegedly erroneously introduced, convinced this court beyond a reasonable doubt that such identifications did not contribute to the conviction of the defendant. [290]

At the trial of an indictment, there was no error in denying the defendant's motion to strike the answer of a witness for the Commonwealth to a question on cross-examination where much of the answer was responsive and the defendant failed to specify the particular material to which he objected; the portion of the answer identified on appeal as the material which prompted the motion was not sufficiently prejudicial to render its admission reversible error. [291]

At the trial of an indictment, there was no error in permitting the prosecutor on redirect examination to question a police officer as to what he observed respecting the defendant's physical demeanor at the time of his arrest, where the question focused on conduct which might indicate consciousness of guilt. [291]

INDICTMENTS found and returned in the Superior Court on December 8, 1971.

The cases were tried before *Spring, J.*

*Daniel F. Featherston, Jr.,* for the defendant.

*Thomas J. Mundy, Jr.,* Assistant District Attorney, for the Commonwealth.

HALE, C.J.  The defendant was convicted after a trial held subject to the provisions of G. L. c. 278, §§ 33A-33G, on indictments charging him with unlawfully carrying a revolver on his person and with armed robbery while masked. The defendant is here on four assignments of error.

We summarize the facts. About 4:00 P.M. on November 5, 1971, the office of the Household Finance Corporation located on the second floor of 294 Washington Street, Boston, was held up by a man carrying a black and white

revolver and with a handkerchief covering his face from the middle of his nose downward. The robber confronted Miss Anne Lobbregt, a clerk in the office, and demanded, "Give me your money." Her supervisor, Arthur Dunbar, said to her, "Give him your money," whereupon she opened a cash drawer, removed all of the bills, and gave them to the robber, who then left. The amount taken was later determined on audit to be $387. A third employee, William Harrington, ran to a window and called out to a man on the street below that he had been robbed. This man was Henry Rinaldi, an off-duty Boston police sergeant. Harrington gave Rinaldi a brief description of the robber.[1] Rinaldi positioned himself so that he could see the Washington Street and Spring Lane exits from the building. While Rinaldi was talking to Harrington a man fitting the description Rinaldi had received from Harrington emerged from the Spring Lane exit. That man was the defendant. Rinaldi followed him down Spring Lane toward Devonshire Street. Just before reaching Devonshire Street the defendant looked in the direction of Rinaldi who had drawn his service revolver. He then began running. He crossed Devonshire Street and stopped at a parked car by the Federal building. The defendant was opening the door of the car when Rinaldi leaned across the trunk of the car, pointed his gun at the defendant, and said, "Police officer. Stop or I will shoot." The defendant looked directly at Rinaldi, opened the door, got in, and attempted to start the car. Rinaldi then went to the driver's side of the car, put his gun through the open window, directed it at the defendant's head and said, "Stop or I will blow your head off." The defendant made a motion with his left hand, whereupon Rinaldi, believing the defendant was reaching for a weapon, opened the door and pulled the defendant out of the car. He removed a loaded .32 caliber revolver from the waistband of the defendant's trousers and made a quick search of

---

[1] Harrington's description of the robber was: five-ten, thin build, brown, bushy hair, wearing a short coat with black and white stripes, blue shirt and white tie.

the defendant's pockets. In one he found a roll of bills totaling $387. Beneath that was another roll of bills containing $16. In another pocket he found a twisted white handkerchief and in another a folded handkerchief. The defendant was observed by Rinaldi to be a thin, white male with bushy brown hair, with "eyes that I describe as wide open, seemed to bulge a little," wearing a very loud sports jacket with black, white, and blue stripes, blue shirt and white tie.

Two other police officers arrived at the scene of the arrest. They took the defendant to the police station, and Rinaldi returned to the Household Finance Corporation office. About twenty minutes later the defendant was brought back to this office by two uniformed police officers and a showup was held at which the defendant was identified by all three of the witnesses as the robber.

Prior to the trial a hearing was held on the defendant's motion to suppress the out-of-court identifications as well as other identifications obtained directly or indirectly as a result thereof.[2] At this hearing Miss Lobbregt, Dunbar, and Harrington testified under extensive examination by the defendant's counsel and by the assistant district attorney as to (1) the circumstances of the robbery and their observations of the defendant at that time, (2) the events between the time of the robbery and the subsequent identifications, and (3) the circumstances surrounding their out-of-court identifications and their observations at that time. The judge allowed the motion to suppress without recording specific findings.

1. The defendant assigns as error the admission in evidence of, and the refusal to strike, the in-court identifications given by the three witnesses. At the trial, which was held before the same judge who heard the motion to suppress, Miss Lobbregt, Dunbar, and Harrington testi-

---

[2] "The defendant moves that said identification, all subsequent identifications and all other evidence whether obtained directly or indirectly as a result thereof be suppressed on the grounds that the defendant was denied his right to counsel at said identification, and said identification was induced by unnecessary suggestive techniques on the part of the police."

fied, and each was asked if the man who held them up was present in the court room. At that point in the testimony of each of the three witnesses, the defendant objected. Each time the judge, without further request, excused the jury and held a voir dire at which he asked each witness substantially the same question: "Now, are you sure that your identification of this defendant now is based upon your observations of him at the time of the alleged robbery and that it was not influenced in any way by your observations of him at the time he was brought back to your office some twenty or thirty minutes later by the police, is that right?" Each witness was permitted to answer and did so in the affirmative. The defendant took exception to the asking of the question by the judge and to the answers given. The trial before the jury was resumed after each voir dire without any further ruling by the judge. Each witness identified the defendant as the robber, and each time the defendant saved an exception.

The defendant contends that the in-court identifications were tainted by an unconstitutionally suggestive showup. We assume that the judge's allowance of the motion to suppress included the in-court as well as the showup identifications. See *Gilbert* v. *California,* 388 U. S. 263, 272.[3] The judge's allowance of that motion was subsequently modified by admitting the in-court identifications in evidence.

The determination that out-of-court identifications are affected by constitutional error does not as a matter of law preclude the same witness from making a valid in-court identification. *United States* v. *Wade,* 388 U. S. 218, 240. *Commonwealth* v. *Cooper,* 356 Mass. 74, 84. See *Cooper* v. *Picard,* 428 F. 2d 1351, 1354 (1st Cir.), *S. C.* 316 F. Supp. 856 (D. Mass.). The test to be applied in this situation is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been

---

[3] The trial in the present case predated certain decisions which have modified the rules relating to identification testimony. See *Kirby* v. *Illinois,* 406 U. S. 682; *Neil* v. *Biggers,* 409 U. S. 188.

come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *United States* v. *Wade, supra,* at 241, quoting *Wong Sun* v. *United States,* 371 U. S. 471, 488. The burden of proof is on the Commonwealth to establish "by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." *United States* v. *Wade, supra,* at 240. In making such a determination the *Wade* case listed six inquiries: (1) the extent of the witness' opportunity to observe the defendant at the time of the crime; prior errors, if any, (2) in description, (3) in identifying another person or (4) in failing to identify the defendant; (5) the receipt of other suggestions, and (6) the lapse of time between the crime and the identification. *Allen* v. *Moore,* 453 F. 2d 970, 975 (1st Cir.). See *United States* v. *Wade, supra,* at 241.

While the judge's failure to make specific findings of fact on the foregoing factors may not be consonant with the preferred procedure in this State, *Commonwealth* v. *Mendes,* 361 Mass. 507, 511, the defendant nevertheless does not base his assignment of error on the absence of such findings. Also in this case the facts with regard to the origins of the witnesses' in-court identifications are uncontroverted. We have reviewed the testimony of Miss Lobbregt, Dunbar, and Harrington at the pre-trial hearing, and we are convinced that the in-court identifications of the defendant by the witnesses had their origins in their observations during the holdup and were independent of their observations at the showup. The importance of each factor listed in the *Wade* case varies with the factual context presented. *Commonwealth* v. *Ross,* 361 Mass. 665, 671. We regard the extent of the witnesses' opportunity to observe the defendant at the time of the crime as the most important. *Allen* v. *Moore, supra,* at 975. For a period of from five to ten minutes during the holdup the witnesses had the robber under almost constant observation under daylight conditions in an office in which a loan company does business with the public. Each of the witnesses

testified that he observed the defendant from a distance sufficiently close to obtain a good view. Under conditions similar to these there has been little hesitation in finding that the origin or source of the in-court identification was independent of an impermissible confrontation. See *Commonwealth* v. *Cefalo,* 357 Mass. 255; *Commonwealth* v. *Cass,* 358 Mass. 805; *Commonwealth* v. *McGrath,* 361 Mass. 431. It is also significant that the observations made at the robbery were "under circumstances likely to fix in the mind of the witness the identity of the person confronted." *Commonwealth* v. *Frank,* 357 Mass. 250, 254. See *Commonwealth* v. *Nassar,* 354 Mass. 249; *Commonwealth* v. *Robinson,* 355 Mass. 620, 622.

With regard to the other factors to be applied under the *Wade* decision, we note that the descriptions of the robber given by the witnesses to Rinaldi prior to the showup did not materially change and matched the appearance of the defendant when he was apprehended immediately after the robbery.[4] No other person but the defendant was identified as the robber, and the identification of the defendant by each witness at the showup was quick and positive. They identified the rather distinctive clothes he was wearing as the same clothes worn by the robber. The elapsed time between the robbery and the showup was only about twenty minutes. It is difficult to conceive of a situation in which a trial judge could be presented with more clear and convincing evidence that an in-court identification was independent of and untainted by an impermissible showup. Such conclusion was implicit in the finding of the judge when he eventually allowed the in-court identification to be made.

2. The defendant's second assignment of error asserts that the examination of the three witnesses on voir dire by the judge was improper. In particular, the defendant argues that the judge's questions were leading and suggestive and

---

[4] The robber was observed by all three witnesses to have a large nose, wide open and bulgy eyes, and an icy stare. He had brown, bushy, kinky hair. He was wearing a "loud" jacket with blue, black, and white markings.

predetermined the answers, that the refusal of the judge to allow the defendant's counsel to cross-examine violated the defendant's constitutional rights to due process, and that the showup was so suggestive in the circumstances that a more careful voir dire examination was necessary. The purpose of the voir dire was to determine whether the in-court identifications about to be made were independent of the suppressed out-of-court identifications. To that extent the voir dire was, in effect, a reopening of the pre-trial hearing on the motion to suppress, limited to the issue whether an in-court identification had a source independent of the suppressed showup identification. Even if the judge's conduct of the voir dire was improper, several important considerations militate against a finding of prejudicial error. First, the holding of the voir dire was not required as all questions relating to the suppression of the in-court identification should have been and were raised by a pre-trial motion to suppress. See Rule 101B of the Superior Court (effective June 1, 1965). See *Commonwealth* v. *Bumpus,* 354 Mass. 494, 501-502; *Commonwealth* v. *Cooper,* 356 Mass. 74, 78-79. Second, it is unlikely in light of the extensive testimony elicited before this judge at the pre-trial hearing that any additional matters would have been uncovered by a more detailed voir dire. This latter consideration also applies to the refusal to allow cross-examination, as such an inquiry would have elicited facts which would have been cumulative. See *Commonwealth* v. *Rawlins,* 352 Mass. 293, 295. Finally, while the question put by the judge was leading, it was within the discretion of the judge to allow leading questions. *Commonwealth* v. *Johnson,* 352 Mass. 311, 319-320. It certainly was within his discretion to ask them. See *Commonwealth* v. *Galavan,* 9 Allen 271, 274; *Commonwealth* v. *Oates,* 327 Mass. 497, 499-500.

There was no error in the judge's conduct of the voir dire examination held during the trial, nor was there error in allowing the witnesses' subsequent in-court identifications of the defendant.

We pause at this point to observe that in view of the

overwhelming evidence of the guilt of this defendant, there is no reasonable possibility that the in-court identifications might have contributed to his conviction. Of this we are convinced beyond a reasonable doubt. See *Chapman* v. *California*, 386 U. S. 18, 23-24; *United States* v. *Wade*, 388 U. S. 218, 242. The other evidence as a whole leaves no room for reasonable doubt of the accused's guilt. The defendant emerged from the scene of the robbery, was observed by Rinaldi as fitting the description given him by Harrington, and was immediately followed. His running upon seeing Rinaldi and his conduct at the scene of the arrest were substantially inconsistent with innocence. A search revealed a distinctive gun fitting the description of that used by the robber, the exact amount of money stolen, and two handkerchiefs, one folded and the other in a twisted state, suggestive of its use as the mask.

3. During the cross-examination of Sergeant Rinaldi, the defendant's counsel inquired into the circumstances surrounding the defendant's return to the Household Finance Corporation office while in the custody of two police officers. The fact that there had been a showup identification had not been previously mentioned before the jury during the trial although reference had been made to a planned "viewing." After a series of questions concerning how the defendant arrived at the office, who was with him, and what the Household Finance Corporation employees were told concerning the reason for the defendant's presence, the defendant's counsel asked Sergeant Rinaldi, "And in that viewing by the three employees, was there anyone else other than law enforcement personnel, Household Finance employees, and the defendant?" Rinaldi answered: "The only ones at the viewing were the suspect and myself, and at the end of the counter, all uniformed policemen, and the two male employees of the Household Finance were not at the initial view. The only one at the initial view that saw him first was Miss Lobbregt. He was standing next to me because I had him. I pulled him to the side with me at the end of the counter. The two male employees were in the glass enclosure who come out and

Commonwealth *v.* Flaherty.

said, 'That is the man.' " Counsel for the defendant then proceeded to ask another question but interrupted himself and said, "Motion to strike that, your Honor, please." The judge asked, "What's that?" We construe this to be a question by the judge asking the defendant's counsel to specify what he desired stricken. Counsel did not do so but instead restated the motion in the same words, and the judge denied it. We consider the defendant's exception, upon which he bases his third assignment of error, as encompassing the answer in its entirety and apply the familiar rule that if the objection is too broad, including unobjectionable matter within its scope, the overruling of the objection is not error. *Irving* v. *Goodimate Co.* 320 Mass. 454, 460. Much of the answer was responsive to the question. In any event, that part of the answer the defendant points to on appeal was not sufficiently prejudicial to constitute reversible error.

4. The fourth assignment of error is based on the judge's overruling of the defendant's objection to the following question put by the assistant district attorney to Rinaldi on redirect examination: "Sergeant, what did you observe as to the defendant's physical demeanor at the time that you had placed your service revolver close to his head while he was behind the steering wheel of his car?" While not in the best form this question was proper as it focused on conduct which might indicate the defendant's consciousness of guilt. There was evidence that the defendant made a motion at this time and that he carried a gun at his left side. The answer[5] to the question was properly struck. The question was not repeated.

*Judgments affirmed.*

---

[5] "The coldest man I ever arrested in my life."