COMMONWEALTH *vs.* BERNARD F. UNDERWOOD.

Essex. May 15, 1975. — October 20, 1975.

Present: ROSE, GRANT, & ARMSTRONG, JJ.

*Practice, Criminal,* Speedy trial, Challenge to array of jurors. *Constitutional Law,* Speedy trial. *Identification. Jury and Jurors.*

There was no violation of the provision of G. L. c. 277, § 72A, that a prisoner confined in a correctional institution who has applied for prompt trial or other disposition of an untried indictment or complaint pending against him "shall, within six months after such application is received by the court, be brought into court for trial or other disposition" of such indictment or complaint, where it appeared that the defendant was arraigned in a District Court on three armed robbery complaints within six months after his application was received, and was tried in the Superior Court within six months after the return of indictments on the three charges. [523-526]

A delay of twenty-six months between the time complaints issued against a defendant and his trial did not deny the defendant his right to a speedy trial where it appeared that the defendant was responsible for a considerable portion of the delay, and that the delay was not attributable to intentional efforts or lack of due diligence by the Commonwealth, and where the defendant failed to substantiate a claim that he had been prejudiced by the delay. [526-532]

The uncontradicted testimony of one of the victims of an armed robbery that she had observed the robber over a period of several minutes, from close proximity, under fairly good lighting, and that she had identified the defendant's picture from a group of photographs shown to her a few days after the robbery but prior to her identification of the defendant from a single photograph displayed to her established that her in-court identification of the defendant had an independent source and was properly admitted in evidence even if it were assumed that the witness's identification from a single photograph was impermissibly suggestive. [532-535]

In a challenge by a criminal defendant to the array of traverse jurors because of the alleged exclusion of persons under the age of twenty-

five, persons on welfare, women with children under a certain age, and persons over the age of sixty-five, where the only evidence introduced by the defendant was data on the population of the cities and towns in the county, the defendant failed to sustain his burden of proving that any distinct and identifiable class had been systematically excluded [535-536]; motions made after the jury was empanelled, aimed at securing witnesses and records to substantiate the challenge, were properly denied as not timely. [536-538]

INDICTMENTS found and returned in the Superior Court on September 21, 1973.

Pre-trial motions were heard by *Adams,* J., and the cases were tried before him.

*Lois M. Lewis* for the defendant.

*John H. Perrone,* Assistant District Attorney, for the Commonwealth.

ROSE, J.   The defendant was convicted on three indictments for armed robbery in a trial held subject to G. L. c. 278, §§ 33A-33G. He is here on an assignment of errors, on the basis of which he advances three principal arguments. Errors assigned but not argued are deemed waived. The facts material to the argued issues will be recited separately in our discussion of each of them.

1. First, the defendant contends that he was denied his right to a speedy trial, in violation of the statutory mandate of G. L. c. 277, § 72A, as amended through St. 1965, c. 343, and the guarantees of the United States (Sixth Amendment by reason of the Fourteenth, see *Klopfer* v. *North Carolina,* 386 U. S. 213 [1967]), and Massachusetts (art. 11 of the Declaration of Rights) Constitutions.

The chronology of events material to this issue is as follows. The robberies occurred on November 14, 1971. The defendant was named in three complaints issued by a District Court on November 30, 1971. At that time the defendant was a fugitive from justice, but he was returned to M. C. I., Walpole, on May 10, 1972.[1] Arrest warrants were lodged at Walpole on November 2, 1972. On December 11,

---

[1] The defendant's counsel stated this fact in her argument at the November 12, 1973, hearing on the motion to dismiss.

1972, the defendant signed an application under G. L. c. 277, § 72A. The Commissioner of Correction signed the application on December 13, 1972, but it was not received by the District Court until February 13, 1973. The defendant was arraigned in the District Court on June 20, 1973, where he filed a motion to dismiss on July 31, 1973, on the ground of failure to grant a speedy trial in compliance with G. L. c. 277, § 72A. This motion was denied by the court on the same day. The defendant then filed pro se, on September 14, 1973, a petition seeking interlocutory relief in the Supreme Judicial Court.[2] The indictments were returned September 21, 1973. A motion to dismiss the indictments for failure to grant a speedy trial was filed in the Superior Court on October 24, 1973, and denied on November 12, 1973. The motion to dismiss was renewed at the inception of the trial on February 14, 1974.

A. We first consider the defendant's claim that the Commonwealth failed to comply with the requirements of G. L. c. 277, § 72A. That statute provides, in the parts relevant to the question before us, that a "prisoner serving a term of imprisonment . . . has the right to apply" to a court in which an "untried indictment, information or complaint is pending" against him "for prompt trial or other disposition thereof. Such application shall be . . . sent by such prisoner to the commissioner of correction . . . who shall promptly forward it to such court . . .. Any such prisoner shall, within six months after such application is received by the court, be brought into court for trial or other dis-

---

[2] The petition was transferred to this court on December 11, 1973, pursuant to G. L. c. 211, § 4A, as amended through St. 1972, c. 740, § 2, where it was denied without prejudice on December 18, 1973. The defendant then made a motion to reconsider the denial on December 21, 1973, and on January 8, 1974, made a further motion to reconsider the denial due to the severity of alleged prejudice to the defendant caused by the death of two alibi witnesses. On January 22, 1974, the motion was heard by a single justice of this court, who, on January 23, 1974, revoked the December 18, 1973, order and entered an order denying the petition for interlocutory relief. On January 25, 1974, the defendant filed a bill of exceptions with the Appeals Court which was heard and disallowed by a single justice on February 28, 1974.

position of any such indictment, information or complaint, unless the court shall otherwise order."

General Laws c. 277, § 72A, is a statute of limited purview, intended to expedite and dispose of charges pending against an individual who is already serving a term of imprisonment. *Commonwealth* v. *Stewart,* 361 Mass. 857 (1972). *Commonwealth* v. *Gove,* 366 Mass. 351, 355 (1974). The charge of which an applicant seeks a speedy disposition must have a status before a particular court (*Commonwealth* v. *Royce,* 358 Mass. 597, 599 [1971]; *Commonwealth* v. *Gove, supra*), and the statute directs that application be made to that court.

Accordingly, we focus initially on the question whether the complaints issued by the District Court were disposed of in accordance with G. L. c. 277, § 72A, following the defendant's application thereunder. The defendant argues that because he signed the application on December 11, 1972 (and immediately forwarded it to the Commissioner of Correction who signed it two days later), and because he was not arraigned in the District Court until June 20, 1973, the six-month period provided by the statute was not complied with. However, G. L. c. 277, § 72A, specifically sets the operative event for the commencement of the six-month period as the time "such application is received by the court." The defendant's application was not received by that court until February 13, 1973. The arraignment, which was an effective disposition of the warrants pending in the District Court (*Commonwealth* v. *Gove,* 1 Mass. App. Ct. 614, 618 [1973]; compare *Commonwealth* v. *Stewart, supra*), thus took place within six months of *receipt* by the court of the defendant's application.

The defendant also directs our attention to the two-month delay between the signing of his application by the Commissioner of Correction on December 13, 1972, and the receipt of the application by the District Court on February 13, 1973. No explanation for the delay appears in the record before us. We see no reason to deviate from the statutory period of six months from *receipt* in the absence of a showing of purposeful delay on the part of the

Commonwealth. See *Commonwealth* v. *Kennedy*, 2 Mass. App. Ct. 813 (1974).

Alternatively, if the defendant's application or his motion before the Superior Court to dismiss for failure to grant a speedy trial pursuant to G. L. c. 277, § 72A, (see *Commonwealth* v. *Boyd*, 367 Mass. 169, 177 [1975]) is taken as imposing a six-month requirement on the Superior Court, the effective date for the commencement of that period was September 21, 1973, when the indictments were returned. See *Commonwealth* v. *Royce, supra,* at 599; *Commonwealth* v. *Stewart, supra.* The trial on the indictments began on February 14, 1974, well within six months from the date the indictments were returned.

The defendant's claim of a violation of G. L. c. 277, § 72A, is without merit.

B. In addition to the claim of violation of the statutory right provided by G. L. c. 277, § 72A, the defendant argues that he was denied his right to a speedy trial guaranteed by the State and Federal Constitutions.[3] See *Commonwealth* v. *Gove*, 366 Mass. at 356-365; *Klopfer* v. *North Carolina*, 386 U. S. 213 (1967); *Dickey* v. *Florida*, 398 U. S. 30 (1970); *United States* v. *Marion*, 404 U. S. 307 (1971); *Barker* v. *Wingo*, 407 U. S. 514 (1972). For purposes of this discussion, we consider these two constitutional mandates to be analogous. *Commonwealth* v. *Gove, supra,* at 356, n. 6. *Commonwealth* v. *Blasser*, 2 Mass. App. Ct. 754, 760 (1975). We follow the two-step analysis employed in *Commonwealth* v. *Gove*: "a preliminary consideration of the time at which the guaranty attaches and a subsequent plenary consideration of the facts in . . . [the] particular case in terms of the criteria by which the constitutionality of delays is judged." 366 Mass. at 357, citing *Dickey* v. *Florida, supra,* at 41.

Complaints on all three charges were issued by the District Court on November 30, 1971. The defendant thereby

---

[3] The defendant is not deprived of these guarantees because of his status as a prison inmate convicted of another offense. *Smith* v. *Hooey,* 393 U. S. 374 (1969); *Commonwealth* v. *Gove, supra,* at 357.

became the "accused," and his constitutional right to a speedy trial attached at that time. *United States* v. *Marion,* 404 U. S. 307 (1971). *Commonwealth* v. *Horan,* 360 Mass. 739, 740-741 (1972). *Commonwealth* v. *Gove, supra,* at 358-359. The total time period from the date of the complaints until the date of trial on February 14, 1974, covered twenty-six and a half months.

Under the test devised in *Barker* v. *Wingo,* four factors are employed in a "difficult and sensitive balancing process" to determine whether the constitutional mandate of a speedy trial has been complied with. 407 U. S. at 530-533. *Commonwealth* v. *Gove, supra,* at 361. The factors are the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* quoting *Barker* v. *Wingo, supra,* at 530. The factors are accorded equal weight, with "[t]he burden on the defendant to demonstrate prejudicial delay sufficient to warrant dismissal." *Commonwealth* v. *Gove, supra,* at 361; and cases cited.

The threshold inquiry is whether the delay was of sufficient length to trigger an examination of the other factors. *Commonwealth* v. *Gilbert,* 366 Mass. 18, 21 (1974). *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 701 (1974). A twenty-six and a half month delay clearly merits close scrutiny of the defendant's speedy trial claim. See *Commonwealth* v. *Gove, supra,* at 362, n. 13. Compare *Commonwealth* v. *Gilbert, supra* (31 months); *Commonwealth* v. *Dominico, supra* (19 months).

The next factor of the *Barker* balancing test that we consider is whether the defendant has asserted his right to a speedy trial. Unquestionably, the defendant consistently and energetically pressed his interest on this point. This, in itself, is not enough, however.

In considering the reasons for the delay, we note initially that significant portions of this time are attributable to the defendant. At the time the complaints were issued the defendant had been a fugitive from justice for a period of approximately five and a half months. He apparently remained so until returned to M. C. I., Walpole, on May 10,

1972.[4] Certainly, that period must be excluded in any consideration of the delay in bringing the defendant to trial, as he cannot have a speedy adjudication of the charges brought against him while he is absent or unavailable. See *Commonwealth* v. *Jones*, 360 Mass. 498, 501 (1971); *Commonwealth* v. *Blasser*, 2 Mass. App. Ct. at 756, 760; A. B. A. Standards, Speedy Trial, § 2.3 (e), pp. 29-30 (Approved Draft, 1968).

An examination of the period from May 10, 1972, when the defendant was serving sentences at M. C. I., Walpole, for unrelated offenses, and November 2, 1972, when the warrants were lodged at the prison likewise does not presumptively indicate delay attributable to the Commonwealth. The defendant cannot expect his whereabouts to be quickly ascertained when he has been a fugitive from justice for over five months after the complaints were issued. Further, as in *Commonwealth* v. *Gove, supra,* at 363, where the defendant's motion to dismiss and the resulting hearing "undoubtedly . . . set back the trial date," here the defendant's motion to dismiss on July 31, 1973, and his resulting appeal also were responsible for considerable delay.

Thus, the defendant is responsible for a considerable period of delay occurring toward the end of the twenty-six and a half month time span under scrutiny. From the moment the defendant filed his pro se petition for interlocutory relief on September 14, 1973, in the Supreme Judicial Court, all movement toward the commencement of his trial was stopped due to the pendency of the petition at the appellate level. Indeed, the motion judge at the November 12, 1973, hearing indicated that it would be unwise to proceed with a trial which could be rendered a nullity if the pro se petition should be allowed. We are in agreement with that assessment of the situation.[5] Adding to this delay, both the

---

[4] See note 1, *supra.*

[5] We do not think we should attribute to the Commonwealth the three month delay from the time the pro se petition was filed in the Supreme Judicial Court, until the time when the petition was transferred to and decided by this court, as that period was apparently

defendant and his counsel admitted at the November 12th hearing that if the motion were denied, they were neither "pressing" nor "prepared" to go to trial at that time. The period between November 12, 1973, and the trial on February 14, 1974, was consumed by voluminous pre-trial motions filed by the defendant, and delay during that period was for the accommodation of the defendant. Compare *Commonwealth* v. *Boyd,* 367 Mass. 169, 177-179 (1975); *Commonwealth* v. *Parry,* 1 Mass. App. Ct. 730, 733-734 (1974).

There is little if any explanation in the record for the remaining delay, the period between November 2, 1972, and June 20, 1973. However, "[a]bsent a demonstration of culpability on the part of the Commonwealth in delaying trial, 'the burden . . . [is] on the defendant to show that the government unreasonably caused a prejudicial delay.'" *Commonwealth* v. *Jackson, ante,* 511, 517 (1975), quoting *Commonwealth* v. *Gilbert, supra,* at 22. We hold that this burden has not been sustained by the defendant. However deplorable the delays in notifying the defendant of the charges and in arraigning him, there is no showing of a calculated effort on the part of the Commonwealth to prejudice the defendant. Cf. *United States* v. *Brown,* 495 F. 2d 593, 600 (1st Cir. 1974), cert. den. 419 U. S. 965 (1974); *Barker* v. *Wingo,* 407 U. S. at 531.

Delay must be proportional in part to the complexity of the case. See *Barker* v. *Wingo,* 407 U. S. at 531; *Commonwealth* v. *Dominico, supra,* at 701. The transcript of the trial reveals that these were not complex crimes or ones involving complicated investigation and preparation on the part of the prosecution. Nevertheless, although the prosecution of a crime may be relatively straightforward, when that crime is a felony certain procedural steps (designed largely for the benefit of a defendant) are necessitated by our system of criminal jurisprudence, and "orderly criminal

caused by the defendant's failure to seek a hearing on the petition. The defendant's further pursuit of relief in this court after December 21, 1973 (see n. 2), undoubtedly contributed to further delay in the commencement of his trial.

proceedings of necessity entail some delay for preparation and hearings." *Commonwealth* v. *Gove, supra,* at 362. This case, moving through the two-tier Massachusetts court system, permitted the defendant to come under the jurisdiction of two separate courts. Following a probable cause hearing in the District Court, the defendant was bound over to the grand jury, which subsequently indicted him. The disposition of the defendant's case in the Superior Court was, in fact, expeditious, involving an interval of less than two months between the indictments and the hearing on the motion to dismiss, discussed above. "The essential ingredient [of the right to a speedy trial] is orderly expedition and not mere speed." *United States* v. *Marion,* 404 U. S. at 313, quoting *Smith* v. *United States,* 360 U. S. 1, 10 (1959).

In the circumstances of this case, as in *Commonwealth* v. *Gove,* the defendant has not established either a lack of due diligence by the Commonwealth or deliberate efforts by the Commonwealth to postpone trial. Clearly, the defendant was responsible for much of the delay and he has failed to sustain the burden of showing that the Commonwealth intentionally or unreasonably caused the balance of the delay.

Finally, we turn to the question whether the defendant was prejudiced by the delay in bringing his case to trial. While lack of a showing of prejudice to a defendant is not in itself sufficient to deny a speedy trial claim (*Moore* v. *Arizona,* 414 U. S. 25 [1973]; *Commonwealth* v. *Green,* 353 Mass. 687, 690 [1968]), nevertheless, it is an important factor to be considered.

The defendant argues that he was prejudiced in his ability to defend himself because two witnesses who could provide alibi evidence had died in the interval prior to trial. (A third alibi witness did testify at trial.) Neither at the November 12, 1973, hearing on the defendant's motion to dismiss (filed October 24, 1973) nor at the time of the renewal of that motion just prior to trial did the defendant introduce, or attempt to introduce, any evidence to that

effect.[6] We cannot accept unsupported assertions of counsel that certain witnesses had since deceased. In these circumstances, such allegations should have been supported either by affidavits or by evidence introduced at the time the motions to dismiss were argued[7] so that the question of credibility could be timely passed upon.[8] See *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. at 703. "The defendant must ... substantiate his claim that delay prejudiced *his* defense." *Commonwealth* v. *Gove,* 366 Mass. at 364, citing cases. On the record before us, there is no acceptable basis for our concluding that the defendant was prevented from making his strongest case.

In light of the defendant's responsibility for a sizeable portion of the delay, his failure to show lack of due diligence or intentional efforts to delay trial on the part of the Commonwealth, and his failure to substantiate a showing of prejudice as a result of the delay, we conclude that the de-

---

[6] As part of the defendant's second motion before this court seeking a reconsideration of the denial of his petition to file an interlocutory appeal from the denial of his October 24, 1973, motion to dismiss (see n. 2), the defendant requested this court to grant an evidentiary hearing in light of the claimed loss of witnesses. As the defendant had never sought to introduce such evidence in the Superior Court, it was not appropriate that he seek such relief before us at that time. The defendant made no attempt to introduce any such evidence in the Superior Court at the subsequent renewal of his motion to dismiss prior to the commencement of trial.

[7] The defendant's counsel may not have been aware of the fate of these alleged alibi witnesses at the time of the November 12, 1973, hearing, but such was not the case at the time she renewed the motion to dismiss just prior to trial.

[8] At trial, a witness called by the defendant did testify that two individuals who were with the defendant on the night the crime was committed (at a location which would establish an alibi) had since died. Introduction of such evidence for consideration on the question of prejudice relating to the defendant's loss of his right to a speedy trial was not appropriate at that stage of the proceedings. Rulings had already been made on the defendant's motions to dismiss. The trial judge had no occasion to pass upon the credibility of this testimony at that late date. It is not appropriate for us to do so from a *naked* transcript on appeal. Cf. *Commonwealth* v. *Flynn,* 362 Mass. 455, 463 (1972); *Commonwealth* v. *Murphy,* 362 Mass. 542, 547 (1972); *Commonwealth* v. *Fleurant,* 2 Mass. App. Ct. 250, 254 (1974).

fendant was not denied his constitutional right to a speedy trial.

2. Next, the defendant assigns as error the denial of his motion to suppress an out-of-court identification made by one of the victims of the robbery from the showing of a single photograph and the anticipated (and subsequently admitted) in-court identification by her; the latter on the ground that it was tainted by the challenged out-of-court identification.

The trial judge made no findings of fact in relation to his denial of the motion to suppress. While a preference for such a judicial record of facts found in a pretrial suppression hearing has been expressed on numerous occasions (*Commonwealth* v. *Cook*, 351 Mass. 231, 234 [1966], cert. den. 385 U. S. 981 [1966]; *Commonwealth* v. *Murphy*, 362 Mass. at 544, 546-547; *Commonwealth* v. *Forrester*, 365 Mass. 37, 44-45 [1974]; *Commonwealth* v. *Henley*, 1 Mass. App. Ct. 564, 567 [1973]), the fact that all the evidence at the pre-trial suppression hearing, introduced through a single witness, was uncontradicted[9] permits us to review the judge's ruling on the motion without the necessity of remanding the case for the purpose of making such findings. See *Commonwealth* v. *Flaherty*, 1 Mass. App. Ct. 282, 287 (1973). Cf. *Commonwealth* v. *Forrester, supra.*

The victim, who made the contested out-of-court photographic identification, testified at the pre-trial suppression hearing that the robbery took about five to seven minutes, that the defendant held a gun aimed at her, that she had an opportunity to observe the defendant, that she

---

[9] In reviewing the correctness of the trial judge's denial of the defendant's motion to suppress, we consider only that evidence introduced at the pre-trial hearing on that motion. See *Commonwealth* v. *Roy,* 2 Mass. App. Ct. 14, 18, fn. 1 (1974); *Commonwealth* v. *Fleurant,* 2 Mass. App. Ct. 250, 254 (1974). Evidence introduced at trial may vary from that before the judge at the suppression hearing. For instance, the victim testified at the probable cause hearing that she was unable to identify the defendant's picture from the group of photographs shown to her shortly after the robbery. Evidence introduced at that time was relevant only to the credibility (as opposed to the admissibility) of the in-court identification.

stood right in front of him, and that the lighting was fairly good. She also testified that three or four days after the robbery she was shown a group of pictures from which she identified the defendant. The identification actually sought to be suppressed was one made from a single photograph and occurred about a week after the identification from the group of photographs. No evidence was introduced as to the manner or circumstances in which the photograph was shown, and there is nothing in the record to indicate that the photograph itself was introduced in evidence at that time.

The Commonwealth did not introduce at trial testimony concerning the claimed suggestive photographic identification.[10] Contrast *Commonwealth* v. *Kudish*, 362 Mass. 627, 630-631 (1972). Therefore, the judge's denial of the motion to suppress it, if error, was most certainly harmless. Consequently, we limit our review of the judge's ruling solely to the question whether the in-court identification was properly admitted in evidence.

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States*, 390 U. S. 377, 384 (1968); *Commonwealth* v. *Murphy*, 362 Mass. at 544. As soon as it becomes apparent that the out-of-court identification may have been affected by constitutional error, the burden of proof shifts to the Commonwealth to establish by clear and convincing evidence that there is an independent basis for a subsequent in-court identification by the witness. *United States* v. *Wade*, 388 U. S. 218, 240 (1967). *Commonwealth* v. *Flaherty*, 1 Mass. App. Ct. at 287. But the defendant has the initial burden of showing possible illegality. Except for the fact that the defendant was identified

---

[10] Instead, it was introduced in evidence by the defendant on cross-examination, apparently for the purpose of undermining the credibility of the witness. Cf. *Commonwealth* v. *Lombardo,* 2 Mass. App. Ct. 387, 389 (1974).

from the showing of a single photograph, no evidence was introduced as to the procedure or circumstances in which the photograph was shown.

Even if we were to assume that the out-of-court photographic identification procedure was impermissibly suggestive, that fact "does not as a matter of law preclude the same witness from making a valid in-court identification." *Commonwealth* v. *Flaherty, supra,* at 286, citing *United States* v. *Wade, supra,* at 240. *Commonwealth* v. *Cooper,* 356 Mass. 74, 84. "The test to be applied in this situation is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Commonwealth* v. *Flaherty, supra,* quoting *United States* v. *Wade, supra,* at 241 and *Wong Sun* v. *United States,* 371 U. S. 471, 488 (1963).

Applying the standards formulated by the United States Supreme Court in *United States* v. *Wade, supra,* at 241 (see also *Stovall* v. *Denno,* 388 U. S. 293 [1967]; *Simmons* v. *United States,* 390 U. S. 377 [1968]), and repeated in this jurisdiction on numerous occasions (see *Commonwealth* v. *McGrath,* 361 Mass. 431, 438; *Commonwealth* v. *Flaherty, supra*), we rule that the uncontradicted testimony of the only witness called at the suppression hearing established by clear and convincing evidence that her in-court identification would have an independent source. The witness had ample opportunity to observe the defendant at the time of the crime (generally considered the most important of the factors set out in the *Wade* case; see *Commonwealth* v. *Kennedy, ante,* 218, 221, n. 4 [1975], and cases cited), over a period of several minutes, from close proximity, under fairly good lighting.[11] In addition, the observa-

---

[11] Compare *Commonwealth* v. *Ross,* 361 Mass. 665, 675 (1972), judgment vacated 410 U. S. 901 (1973), affd. on rehearing 363 Mass. 665 (1973); *Commonwealth* v. *Roberts,* 362 Mass. 357 (1972); *Commonwealth* v. *Flaherty, supra,* at 287-288; *Commonwealth* v. *Henley,* 1 Mass. App. Ct. 564, 566 (1973); *Commonwealth* v. *Kennedy, supra,* at 221, n. 3, 222, n. 5. Contrast *Commonwealth* v. *Teta,* 358 Mass. 814 (1971); *Commonwealth* v. *Sheridan, ante* 50, 52 (1975).

tion was made "under circumstances likely to fix in the mind of the witness the identity of the person confronted." *Commonwealth* v. *Frank,* 357 Mass. 250, 254 (1970) ; *Commonwealth* v. *Kennedy, supra.* Moreover, the witness testified that she correctly identified the defendant's picture from a group of pictures shown to her several days after the robbery but prior to the display of the single photograph. Compare *Commonwealth* v. *Ross, supra,* at 673-676; *Commonwealth* v. *Flaherty, supra,* at 288. No contention is made that that initial identification was the product of any improper action by the State; it follows that repetitions of that initial identification need not be suppressed. *Commonwealth* v. *Wheeler, ante,* 387, 392 (1975). There was no error in admitting in evidence the in-court identification of the defendant by this eye-witness.

3. The last of the defendant's assigned errors that we consider is the denial of his challenge to the array of traverse jurors.[12] The challenge to the array is premised on the alleged exclusion of the following groups: (1) persons under the age of twenty-five, (2) persons on welfare, (3) women with children under a certain age and (4) persons over the age of sixty-five. The defendant argues that the exclusion of these groups resulted in a violation of his right under the Sixth Amendment (by way of the Fourteenth) and art. 12 of the Declaration of Rights to be tried before a petit jury selected from a representative cross section of the community. See *Taylor* v. *Louisiana,* 419 U. S. 522, 526-533 (1975) ; *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 214-15 (1971), cert. den. sub nom. *Farrell* v. *Massachusetts,* 407 U. S. 910 (1972), and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U. S. 914 (1972).

On a challenge to the jury array, the defendant has the burden of proving as a matter of fact that a distinct and

---

[12] The defendant first filed his challenge to the array prior to the commencement of trial. The challenge was renewed prior to completing the empanelling of the jury and again at the close of the Commonwealth's presentation of its case. As will be pointed out, *infra,* only the first two challenges were timely.

identifiable class of persons has been systematically ex-
cluded from the jury selection process. *Hernandez* v. *Texas*,
347 U. S. 475 (1954). *Swain* v. *Alabama*, 380 U. S. 202, 205
(1965). *Taylor* v. *Louisiana, supra*, at 526-538. *Common-
wealth* v. *Beneficial Fin. Co., supra*, at 214. *Commonwealth*
v. *Stone*, 366 Mass. 506, 509 (1974). *Commonwealth* v.
*Averett, post*, 710 (1975). See also *Peters* v. *Kiff*, 407 U.S.
493 (1972). Furthermore, the defendant must raise his
challenge prior to the commencement of the trial. See
*Commonwealth* v. *Rodriquez*, 364 Mass. 87, 91 (1973). See
also G. L. c. 277, § 47A.

Whether the exclusion of those four groups would violate
the Fourteenth Amendment need not be considered, be-
cause the defendant has failed to sustain his burden of prov-
ing as a matter of fact that any such exclusion was inten-
tional. See generally *Hernandez* v. *Texas, supra*, at 479;
*Commonwealth* v. *Stone, supra*. But see *King* v. *United
States*, 346 F. 2d 123 (1st Cir. 1965); *Commonwealth* v.
*Slaney*, 350 Mass. 400, 402 (1966); *Commonwealth* v. *Bene-
ficial Fin. Co., supra*, at 212.

The only evidence[13] introduced by the defendant which
is properly before us is a number of monographs published
by the Massachusetts Department of Commerce and De-
velopment containing data on the population (broken down
by age and sex categories) of most of the cities and towns
in Essex County. See *Amory* v. *Commonwealth*, 321 Mass.
240, 250-253 (1947). After the jury was empanelled the
defendant did make two motions[14] aimed at securing wit-
nesses and records for the purpose of substantiating his

---

[13] Counsel for the defendant did not at any time point out to the
court any statutory provisions which might have led to the alleged sys-
tematic exclusion of the four groups, nor did she argue any such point
before this court. See e.g., G. L. c. 234, § 1. But see *Commonwealth* v.
*Beneficial Fin. Co.* 360 Mass. at 213-214 (1971). Even if she had done
so, it would still be necessary to prove any such exclusion as a matter
of fact. See *Commonwealth* v. *Averett, post*, 710 (1975).

[14] The defendant made a "demand for process to summons witnesses
pursuant to G. L. c. 277, § 66," and a motion for appropriate relief to
furnish records.

challenge to the array.[15] However, a challenge to the jury array must be made before the jury is empanelled (*Commonwealth* v. *Rodriquez, supra*), and the motions were therefore properly denied as not timely. After the Commonwealth had rested its case, the defendant sought to introduce in evidence a list of the seventy-one veniremen from which the petit jury was chosen. Introduction of such evidence at that stage in the proceedings was clearly too late. Even where it is shown in a timely fashion by adequate proof[16] that no member of an allegedly excluded group is in a particular jury pool, that showing is not sufficient to establish a case of systematic exclusion. See *Com-*

---

[15] At the time the defendant first argued his challenge to the array prior to the empanelling of the jury, counsel for the defendant did state she was prepared to file the above motions in order to bring in town clerks and welfare administrators as witnesses. However, counsel did not file those motions until after the commencement of trial, when it was too late. See *Commonwealth* v. *Rodriquez, supra.*

At the time the initial challenge was argued the judge stated: "If you have some evidence of systematic exclusion, whether it be documentary or you offer it by witness, I would hear it within some limitations . . . . If you wish to mark anything as an offer of proof I will entertain that." The judge refused, however, to grant a hearing on the question of the challenge to the array. The defendant took an exception to the judge's refusal to grant a hearing and argues that exception before us, but in light of the judge's willingness to receive any evidence then available to the defendant and to allow the defendant to make an offer of proof, we perceive no error.

The only evidence introduced by the defendant was the monographs discussed above. Counsel did not make any offer of proof, as the judge had suggested, as to what she expected to prove through the witnesses she hoped to call.

The defendant here had ample opportunity to prepare his case, including the challenge to the array. See discussion in part 1, *supra.* Cf. *Commonwealth* v. *Dirring,* 354 Mass. 523, 530 (1968). In light of the defendant's motions seeking dismissal because of the Commonwealth's failure to grant him a speedy trial, the judge was understandably desirous of proceeding to trial.

[16] The judge had the list of the venire marked for identification, and, despite its untimely presentation, we have inspected it. The only information contained on the list was the address, occupation and employer (or husband's occupation) of the veniremen. The list does not specify age or marital status. The fact a venireman has a listed occupation is not conclusive proof that he is currently employed. Cf. *Amory* v. *Commonwealth,* 321 Mass. 240, 252-253 (1947).

monwealth v. *Rodriquez,* 364 Mass. at 92. The defendant
has clearly failed to sustain his burden of proving a sys-
tematic exclusion.

*Judgments affirmed.*