COMMONWEALTH *vs.* ROBERT A. MACMILLAN.

Essex.     March 22, 1977. — May 12, 1977.

Present: KEVILLE, ARMSTRONG, & BROWN, JJ.

*Identification. Practice, Criminal,* Charge to jury.

At the trial of an indictment for armed robbery, the judge correctly admitted an in-court identification by a witness where there was sufficient evidence that the identification was made independently of a prior suggestive confrontation. [317-320]

In the context of the entire charge at a criminal trial, the judge did not err in his definition of "reasonable doubt." [320]

INDICTMENT found and returned in the Superior Court on May 19, 1972.

The case was tried before *Ronan, J.*

*Sandra Wischow (Thomas Hoffman* with her) for the defendant.

*Mark A. McComiskey, Jr.,* Assistant District Attorney, for the Commonwealth.

BROWN, J.   The defendant and one Anderson were indicted, jointly tried, and convicted of armed robbery and larceny of a motor vehicle. The defendant appeals from the conviction of armed robbery pursuant to G. L. c. 278, §§ 33A-33G.[1] The defendant moved before trial to suppress out-of-court and anticipated in-court identifications of him by a witness, one Richard Osgood. After a lengthy voir dire the judge made rulings based on detailed findings of fact. He denied the defendant's motion to suppress two photographic identifications and the anticipated in-court identification of the defendant. He allowed the motion to suppress identifications made by Osgood at probable cause hearings in both the Peabody and Salem District Courts on the basis of "*Kirby* v. *Illinois,* 406 U. S. 682 (1972)."[2] The defendant assigns as error the judge's refusal to suppress the in-court identification, and his failure to charge the jury as he had requested.

Following is a summary of the judge's findings, amplified by some details from the transcript, as they relate to the confrontations and identifications of the defendant by Osgood. On February 24, 1972, at about 8:00 or 8:30 P.M., one Lee, a tenant in a duplex owned by Osgood, was robbed. At that time, Osgood, the occupant of the other half of the duplex, returned home in his automobile. It was "a bright clear night." Bradstreet Avenue, in the area of the duplex, was artificially illuminated by two streetlights

---

[1] The larceny conviction was filed with the defendant's consent.

[2] Although the judge did not so state in his memorandum opinion, it is fair to assume that the defendant was not represented by counsel in either of the District Court proceedings.

of the mercury-vapor type. A recent snowfall further brightened the area.

Osgood parked his car on the opposite side of the street from the duplex and proceeded to shovel out a parking space directly in front of his house. This was about "twenty to thirty feet from Lee's front entrance."

Osgood was shovelling for about ten minutes during which time the judge found he made the following observations. A man who Osgood at first thought was Lee was behind the wheel of Lee's car. There was a second man, dressed in a plaid jacket, later identified by Osgood as the defendant, who was standing near a Ford station wagon which was in front of Lee's car. These men were attempting to start the Ford with jumper cables attached to Lee's car, an Oldsmobile. A third man opened the door of the Lee premises twice. He yelled to the two men outside, inquiring if the car was running yet. Osgood became suspicious and approached Lee's car. At that time, Lee's Oldsmobile was being used to push the Ford down the street. As Osgood walked up to Lee's car the driver put on dark sunglasses and slumped down in the seat. The third man then came out of Lee's residence, dropped a beer bottle into the snow, and got into the Oldsmobile, which was immediately driven away. Osgood then entered Lee's apartment and found him untying his bonds. Later that night Osgood gave a description of two of the men to the police.[3] (He was unable to describe the driver of the Lee car.)

About a week later at the fire station where Osgood was employed a "police officer showed up with a large photo album." Out of numerous photographs Osgood identified the defendant as the man in the plaid jacket. He also identified Anderson as the man he thought he saw in the

---

[3] Osgood was unable to remember the details of the description of the man he later identified as the defendant except that he was wearing a plaid jacket. The police officer testified that Osgood had also described the man as being "short."

doorway.[4] There was evidence that the policeman who came to the fire station told Osgood, after the latter had identified the defendant, that the name of the man in the plaid jacket was MacMillan.[5]

The judge further found that approximately one month later both Anderson and the defendant were arrested while riding in Lee's Oldsmobile. Osgood and Lee were asked to come down to the Peabody police station, where each was shown approximately twelve photographs. "These photographs were shown to the witnesses one at a time and were not displayed in any unusual manner." The photographs of the defendant and Anderson, however, had been taken that afternoon by the Peabody police. Osgood picked out the Peabody police photographs of the defendant and Anderson. Osgood remembered being able to identify both the defendant and Anderson positively at that time.

The judge also found that the next day Osgood and Lee viewed the defendant and Anderson in the Peabody District Court at a probable cause hearing.[6] (The defendant and Anderson were handcuffed at that time.) He also found that a week later Osgood and Lee viewed the defendant and Anderson in the Salem District Court at another probable cause hearing.

At the voir dire Osgood identified the defendant as one of the persons he had observed on the night of the robbery.

1. The defendant's principal argument on appeal is that Osgood's in-court identification of the defendant was tainted by prior suggestive confrontations. We agree with

---

[4] Osgood testified that he remembered being able positively to identify one of the men and being able tentatively to identify the other, but he could not remember which was which.

[5] Shortly thereafter Lee mentioned to Osgood that Osgood had met MacMillan on one occasion in Lee's backyard. At the time he initially identified the defendant Osgood had not remembered his previous meeting with MacMillan.

[6] Osgood testified that a policeman asked him, "Are those the two gentlemen," and he replied, "Yes, they are." Osgood was not asked to make a formal identification.

the defendant's contention that Osgood's view of the two handcuffed suspects at a probable cause hearing was suggestive. See *Commonwealth* v. *Frank*, 357 Mass. 250, 252 (1970).

Our conclusion that the confrontations at the Peabody and Salem District Courts were suggestive does not, however, end our inquiry. See *Commonwealth* v. *Cooper*, 356 Mass. 74, 84 (1969). We must determine whether the in-court identification was properly allowed as being based upon observations of the suspect other than those made at the Peabody and Salem District Courts. See *Commonwealth* v. *Mendes*, 361 Mass. 507, 510-511 (1972). The Commonwealth must establish "by clear and convincing evidence" (see *United States* v. *Wade*, 388 U. S. 218, 240 [1967]) that the in-court identifications were not tainted by the suppressed out-of-court identifications. *Commonwealth* v. *Botelho*, 369 Mass. 860, 868 (1976), and cases cited. The judge conducted an extensive voir dire and concluded that the anticipated "in-Court identification was not tainted by any prior suggestive proceedings but was based upon the observations made by the witnesses at the time that they made these observations on February 24, 1972." Where the trial judge makes detailed findings, fully supported by the evidence, such findings "are not likely to be disturbed by us." *Commonwealth* v. *Frank*, 357 Mass. at 254.

*Wade* lists six factors to be employed in determining whether the in-court identification was independent of and not tainted by the suggestive pretrial confrontations.[7] Although the weight of each of these factors may vary with the particular factual context presented (*Commonwealth*

---

[7] These factors are: " '(1) The extent of the witness' opportunity to observe the defendant at the time of the crime; prior errors, if any, (2) in description, (3) in identifying another person or (4) in failing to identify the defendant; (5) the receipt of other suggestions, and (6) the lapse of time between the crime and the identification.' " *Commonwealth* v. *Botelho*, 369 Mass. at 869 (1976), and cases cited. See *United States* v. *Wade*, 388 U. S. at 241.

v. *Ross,* 361 Mass. 665, 671-672 [1972], vacated on other grounds 410 U. S. 901, affd. on rehearing 363 Mass. 665, cert. den. 414 U. S. 1080 [1973]), the witness' opportunity to observe the defendant at the time of the incident is generally considered to be the most important factor. *Commonwealth* v. *Flaherty,* 1 Mass. App. Ct. 282, 287 (1973). *Commonwealth* v. *Kennedy,* 3 Mass. App. Ct. 218, 221, n.4 (1975). "Clearly the firmer the contemporaneous impression, the less is the witness subject to be influenced by subsequent events." *Allen* v. *Moore,* 453 F. 2d 970, 975 (1st Cir. 1972). *Commonwealth* v. *Mendes,* 361 Mass. at 511. In the instant case Osgood was able to observe the defendant over a period of about ten minutes, under good lighting conditions, and only a short distance away from him. Compare *Commonwealth* v. *Underwood,* 3 Mass. App. Ct. 522, 534 (1975), and cases cited. It is also significant that Osgood observed the defendant "under circumstances [that would be] likely to fix in the mind of the witness the identity of the person confronted." *Commonwealth* v. *Frank,* 357 Mass. at 254. *Commonwealth* v. *Flaherty,* 1 Mass. App. Ct. at 288, and cases cited. In addition, the fact that Osgood was able to identify the defendant by photograph on two occasions prior to the suggestive confrontation lends strong support for the judge's conclusion that the in-court identification was made independently of the suggestive pretrial confrontations. See *Commonwealth* v. *Cooper,* 356 Mass. at 84-85; *Commonwealth* v. *Underwood,* 3 Mass. App. Ct. at 535.

Our consideration of the evidence heard by the judge at voir dire satisfies us that the in-court identification was independent of the prior suggestive confrontations. See *Commonwealth* v. *Ross,* 361 Mass. at 672; *Commonwealth* v. *Flaherty,* 1 Mass. App. Ct. at 287. Accordingly, we conclude that the Commonwealth met its burden of proving that Osgood's in-court identification was based on his observations of the defendant at the scene of the crimes, and not on the suppressed identifications. *Commonwealth* v. *Henley,* 1 Mass. App. Ct. 564, 567 (1973). See *Common-*

*wealth* v. *Ferguson,* 365 Mass. 1, 7 (1974), and cases cited; *Commonwealth* v. *Hogg,* 4 Mass. App. Ct. 225, 228 (1976), and cases cited. There was no error.

2. The defendant also challenges the judge's charge to the jury on "reasonable doubt," especially that portion defining "reasonable doubt" as "a doubt for which a good reason can be given." In isolation that instruction was of doubtful propriety, but we believe the charge as a whole (*Commonwealth* v. *Pettie,* 363 Mass. 836, 843 [1973]; *Commonwealth* v. *Therrien,* 371 Mass. 203, 207 [1976]) gave the jury a correct understanding of the Commonwealth's burden of proof. In context, the charge given here was substantially identical to those given and held satisfactory in *Commonwealth* v. *Bjorkman,* 364 Mass. 297, 307, 309 (1973), and *Commonwealth* v. *Coleman,* 366 Mass. 705, 712 (1975).

3. The defendant's only other assignment of error based on an exception (see *Commonwealth* v. *Myers,* 356 Mass. 343, 346 [1969], and cases cited) was not argued and is therefore deemed to have been waived. See Rule 1:13 of the Appeals Court, as amended effective February 27, 1975, 3 Mass. App. Ct. 801; *Commonwealth* v. *Blaney, ante,* 96, 100, n.5 (1977).

*Judgment affirmed.*