COMMONWEALTH *vs.* VINCENT TESTA.

Middlesex.    February 13, 1979. — March 23, 1979.

Present: HALE, C.J., ROSE, & PERRETTA, JJ.

*Identification.*

At a robbery trial, evidence that a witness viewed the robber from a
  very short distance and in excellent light for sixteen to twenty-two
  seconds under circumstances likely to fix the robber's face in his
  memory and that he identified a photograph of the defendant soon
  after the robbery and prior to a possibly suggestive confrontation
  with the defendant in a courthouse lobby warranted a finding that
  the witness's in-court identification of the defendant had a source
  independent of the pretrial confrontation. [295-296]

INDICTMENT found and returned in the Superior Court
on December 10, 1975.

The case was tried before *Alberti,* J.

*Joseph W. Monahan, III,* for the defendant, submitted
a brief.

*James W. Sahakian,* Assistant District Attorney, for
the Commonwealth.

HALE, C.J. The defendant appeals (G. L. c. 278, §§ 33A-
33G) from his conviction of armed robbery (G. L. c. 265,
§ 17). One week prior to trial on this charge the defendant
moved for leave to file a motion to suppress identification
late.[1] The judge denied that motion after a brief argu-

---

[1] The defendant had previously been tried on the present indict-
ment, but that earlier proceeding ended in a mistrial. There is an
indication in the transcript that a motion to suppress identification

ment on the morning of the first day of trial.[2] On the second day of trial, after the jury had been empanelled, the judge held a voir dire hearing on what must have been an oral motion limited to the suppression of the identification testimony of the victim, one Arena. Following that hearing, the judge refused to suppress Arena's testimony. The correctness of that ruling is the only question argued in this appeal. We summarize the pertinent facts found by the judge after the hearing on the defendant's motion to suppress.

At about 2:00 P.M. on September 24, 1975, Arena was accosted in his pharmacy by a man holding a handgun. Arena did not see the gunman until he was alongside him but then was able, from close range and in a well lit area, to observe him for fifteen to twenty seconds. The gunman forced Arena to open his narcotics cabinet and stand facing toward the rear of the shop. However, Arena saw the gunman again when he took a one or two second look at him for the purpose of being able to identify him later.[3] About an hour after the incident, Arena viewed a suspect through a one-way mirror at the police station in Watertown but did not identify him as the robber.

The next day police officers asked Arena to look at a set of approximately ten photographs from which Arena picked out the defendant's photograph which he indicated resembled the robber.[4] The defendant does not contend that the procedure or the array in this or in any of the other photographic identifications was suggestive.

---

testimony had been made and denied at the earlier proceeding, but no record of such actions appears in the docket entries.

[2] The judge ordered the motion to suppress (which had been docketed) struck from the docket.

[3] At trial Arena testified that he had described the robber to the police soon after the incident.

[4] Arena testified at the voir dire hearing that: "When I came to the one I recognized, I laid it aside and when I was through looking at them all, I told the police that this picture resembled the man who held me up the day prior."

On September 29, Arena went to the district court-house in Waltham.[5] While in the courthouse lobby he was asked by a police officer whether he recognized anyone in the lobby. He pointed out the defendant, who was stand-ing twenty-five to thirty feet away,[6] as the man who had robbed him.

On November 17, 1975, before attending the probable cause hearing, Arena again picked the defendant's photo-graph out of a group of about ten photographs. It was not shown whether the other photographs in the group were the same as those in the group seen by him on September 25, 1975.

On the morning of March 11, 1977, before the defend-ant's initial trial (which ended in a mistrial) on the present indictment, Arena was again shown a group of photographs from which he again chose the same photo-graph of the defendant.[7] He identified the defendant in court during the course of the trial.

The judge orally denied the motion to suppress, stating that the time during which Arena observed the defendant in the course of the holdup "was sufficient enough for Mr. Arena to come in and make an identification." Thereafter the judge filed written findings in which he stated that

[5] Arena testified that he went to the courthouse at the request of the police and for the purpose of making an identification.

[6] Arena testified on voir dire that there were very few other people in the lobby at the time, perhaps as few as three or four. He stated that the policeman who met him there directed his attention to "the other corner" of the lobby to see if he recognized anyone there. He saw "the man who held me up [last] week." The defendant was standing with a woman and an "older gentleman" (his attorney). No uniformed officer was in the near vicinity of the defendant, and he was not handcuffed or otherwise restrained.

[7] Arena testified that he had also chosen the defendant's photo-graph out of an array in the assistant district attorney's office at a time between the date of the probable cause hearing and the first day of the first trial. Another identification witness, one Kittredge, was in the room as well, but Arena did not recall whether she had picked out a picture in his presence.

Arena's time of observation was sufficient to enable him to select the defendant's photograph from the groups of photographs shown to him and to make at least two positive in-court identifications of the defendant. At trial on direct examination by the Commonwealth, Arena identified the defendant and testified to the initial photographic identification of the defendant. On cross-examination the defendant elicited testimony by Arena as to some of the subsequent identifications, including the one in the courthouse lobby.

The evidence adduced at the voir dire hearing shows that Arena viewed the robber from a very short distance and in excellent light for sixteen to twenty-two seconds under circumstances likely to fix the robber's face in his memory. *Commonwealth* v. *Frank,* 357 Mass. 250, 254 (1970). *Commonwealth* v. *MacMillan,* 5 Mass. App. Ct. 314, 319 (1977). He never identified anyone other than the defendant as the robber, even though he might have done so at a live one-to-one confrontation conducted before he ever saw a photograph of the defendant. He also identified the defendant or his photograph on every occasion when he was called upon to do so. *Commonwealth* v. *Flaherty,* 1 Mass. App. Ct. 282, 286-287 (1973). He identified a photograph of the defendant soon after the robbery and prior to the confrontation at the District Court. *Commonwealth* v. *MacMillan,* 5 Mass. App. Ct. at 319. In the totality of the circumstances the judge's conclusion (though expressed in other words), that Arena's proposed identification testimony had a source independent of the pretrial confrontation, was warranted. *Commonwealth* v. *Jackson,* 377 Mass. 319, 331-332 (1979), and cases cited. See *Commonwealth* v. *Frank,* 357 Mass. at 253-254 (1970); *Commonwealth* v. *Ross,* 361 Mass. 665, 672 (1972), judgment vacated and remanded on other grounds, 410 U.S. 901, affirmed on rehearing, 363 Mass. 665, cert. denied, 414 U.S. 1080 (1973); *Commonwealth* v. *Roberts,* 362 Mass. 357, 364 (1972); *Commonwealth* v. *Flaherty,* 1 Mass. App. Ct. at 286-288; *Commonwealth* v. *MacMillan,* 5

Mass. App. Ct. at 318-320. Cf. *United States* v. *Wade*, 388 U.S. 218, 240-241 (1967). Thus, even if the confrontation in the District Court lobby could be considered impermissibly suggestive (compare *Commonwealth* v. *Kazonis*, 356 Mass. 649, 652-653 [1970], and *Commonwealth* v. *Botelho*, 369 Mass. 860, 863-865 [1976], with *Commonwealth* v. *Chase*, 372 Mass. 736, 745 [1977]), the identification testimony adduced at trial from Arena by the Commonwealth had a basis independent of that confrontation and was, therefore, admissible.

*Judgment affirmed.*